A10A1216. IMERYS KAOLIN, INC. et al. v. BLACKSHEAR.
(702 SE2d 440)

ANDREWS, Presiding Judge.

This Court granted Imerys Kaolin, Inc. and its insurer's (collectively "Imerys") application for discretionary appeal of the Superior Court's order reversing a portion of the decision of the Appellate Division of the State Board of Workers' Compensation. The ALJ, the Appellate Division and the Superior Court all agreed that Imerys failed to comply with the notice provisions of OCGA § 34-9-104 (a) (2) and therefore could not unilaterally reduce J. W. Blackshear's temporary total disability ("TTD") benefits to temporary partial disability ("TPD") benefits, and we affirm this holding. But the Superior Court reversed that portion of the Appellate Division's decision which held that, following a "reasonably concurrent examination and determination of the employee's condition," a new 60-day period would commence for purposes of providing the employee with notice of the reduction in benefits. Instead, the Superior Court held that Imerys, having failed to provide Blackshear with notice after his initial release to return to work with limitations, could not again utilize the provisions of OCGA § 34-9-104 (a) (2) unless and until there was a subsequent change in Blackshear's status. For reasons that follow, we reverse this holding and reinstate that of the Appellate Division.

OCGA § 34-9-104 (a) (2) and Board Rule 104 allow an employer to unilaterally reduce an employee's TTD benefits to TPD benefits once the treating physician releases the employee to work with limitations or restrictions. The unilateral reduction, however, is contingent on certain notice requirements. Under OCGA § 34-9-104 (a) (2):

> . . . Within 60 days of the employee's release to return to work with restrictions or limitations, the employer shall provide notice to the employee . . . that he or she has been released to work with limitations or restrictions. . . . Whenever an employer seeks to convert an employee from benefits for total disability to benefits for partial disability as provided in this paragraph, such employer may convert the benefits unilaterally by filing a form indicating the reason for the conversion as prescribed by rule of the board.

Board Rule 104 further provides that, to unilaterally reduce benefits, the employer must attach to the appropriate form "the medical report demonstrating the employee is capable of performing work with restrictions."

In this case, the undisputed evidence shows that Blackshear was working for Imerys on May 24, 2001, when he injured both of his hands in the course of his employment. Imerys began paying Blackshear TTD income benefits from the date of injury. On June 11, 2001, Blackshear's physician, Dr. Gary Godlewski, authorized him to return to work with restrictions and also referred him to an orthopedist, Dr. Timothy Stapleton. Based on Dr. Godlewski's release, Imerys informed Blackshear in January 2002 that his TTD income benefits would be reduced to TPD payments effective June 4, 2002.

Imerys, however, never actually reduced Blackshear's benefits in 2002, presumably because it failed to send the appropriate notice to Blackshear within 60 days of the June 11, 2001 release. Instead, it obtained new documentation from Dr. Stapleton releasing Blackshear to work with restrictions. Dr. Stapleton's release, which was dated December 31, 2002, was based on an evaluation conducted in August 2002. Citing the new release, Imerys notified Blackshear on January 14, 2003 that his benefits would be reduced from TTD to TPD on December 31, 2003. The actual reduction apparently took place in January 2004, and on February 8, 2008, Imerys suspended TPD payments on the ground that Blackshear had been paid the maximum amount of TPD benefits to which he was entitled.

In October 2008, Blackshear requested that his TTD benefits be recommenced. According to Blackshear, he had never been timely notified of the unilateral reduction under OCGA § 34-9-104 (a) (2) and therefore the reduction was improper. The administrative law judge assigned to the case agreed. Finding that the June 11, 2001 work release and the December 2003 release from Dr. Stapleton were substantively the same, the ALJ concluded that Imerys was required to notify Blackshear of the reduction within 60 days of June 11, 2001. Because it failed to do so, the ALJ reinstated Blackshear's TTD benefits and awarded them back to the date of the unilateral reduction in January 2004.

Imerys appealed to the Appellate Division, which adopted the conclusions of law of the ALJ with the following exception:

> Consistent with the above, we strike the last sentence of the Conclusions of Law in the award below[1] and replace it with

---

[1] The last sentence reads: "Should the circumstances change and therefore a substan-

the following: Should a release be issued based upon a subsequent examination and determination of limitations, then ostensibly a new 60-day period would commence from the date of the examination and determination, during which another Form WC-104 may be filed, but those circumstances are not presented here.

Both Blackshear and Imerys appealed this decision to the Superior Court. That court rejected the Appellate Division's analysis and reinstated all of the conclusions and findings reached by the ALJ. It further explained that because Imerys failed to file the appropriate notice forms within 60 days of the initial June 11, 2001 release, Imerys was barred from filing a subsequent Form WC-104 unless and until there was a change in Blackshear's status. Imerys now appeals that ruling.

1. The Superior Court erred in holding that OCGA § 34-9-104 (a) (1) requires that Blackshear must undergo a change in "status" before Imerys may again seek to reduce his benefits. Imerys argues that nothing in OCGA § 34-9-104 or Rule 104 supports the Superior Court's "changed status" requirement, and neither the statute nor the rule places a limit on the number of times an employer may seek to reduce benefits based on substantially similar work releases.

The ALJ and the Superior Court apparently based their reasoning on our decision in *City of Atlanta v. Sumlin*, 258 Ga. App. 643 (574 SE2d 827) (2002). The *Sumlin* claimant's treating physician released him to work with restrictions in October 1998. Two years later, the physician "reaffirmed" her determination that the claimant could work with restrictions. Within 60 days of that "reaffirmance," the employer sought to suspend benefits pursuant to OCGA § 34-9-104. The Board rejected the employer's effort, finding that it failed to timely notify the claimant of the *initial* work release. We affirmed that result. See *Sumlin*, supra.

At issue in *Sumlin* was the statutory 78-week limitation on TTD benefits for an employee who is capable of performing work with limitations or restrictions. See OCGA § 34-9-104 (a) (2). As the *Sumlin* Court explained, the "primary issue" was "whether the 78-week limit on temporary total disability benefits . . . is conditioned on compliance with the provision for notice from the employer to the employee within 60 days of the employee's release to return to work with restrictions or limitations." Id. at 645 (1). Apparently, the

---

tively different release be subsequently issued, then ostensibly a new 60-day period would commence from the date of the changed authorization, during which another Form WC-104 could be filed, but those circumstances are not presented here."

*Sumlin* employer tried to suspend benefits on the ground that 78 weeks had passed since the date of the *initial* work release, even though it had not provided the claimant with timely notice of that release. We rejected the employer's effort, finding that the 78-week limitation was contingent on proper notice. Id.

The case before us does not involve the 78-week limitation period. Nevertheless, the ALJ and the Superior Court found *Sumlin* controlling. In essence, they concluded that, under *Sumlin*, an employer has only one "bite at the apple" with respect to timely notifying an employee of a benefits reduction following a work release; a reissued or similar release does not recommence the notice period. Nothing in *Sumlin*, however, expressly supports such a conclusion. In fact, the *Sumlin* decision did not address this procedural issue. Therefore, we find no support or authority for this interpretation of the statute. Rather, we adopt the reasoning of the Appellate Division holding: "The notice is invalid, not because it is similar to a previous notice, but because it was issued more than 60 days from the time the restrictions were 'determined' (as opposed to merely articulated, recorded or affirmed)." Accordingly, the Superior Court's order is reversed to the extent that it holds otherwise.

2. The Superior Court correctly affirmed both the ALJ and the Appellate Division in their determination that the second notice was untimely. The employer is required to strictly comply with the requirements of OCGA § 34-9-104 (a) (2) and Board Rule 104. See *Sumlin*, supra at 646. As the Appellate Division stated, OCGA § 34-9-104 (a) (2) and Board Rule 104 assure "that a unilateral suspension of benefits is based upon a reasonably concurrent examination and determination of the employee's condition, not a mere reaffirmation of an otherwise untimely examination." Here, the notice provided to Blackshear

> was generated over five months from the last medical evaluation and over four months from the functional capacity evaluation referenced in that notice. Therefore, regardless of when that notice was articulated, it could not have been based upon any determination within the time period required under Board Rule 104.

*Judgment affirmed in part and reversed in part. Doyle, J., concurs. Ellington, J., concurs in the judgment only.*

DECIDED SEPTEMBER 15, 2010 —
RECONSIDERATION DENIED OCTOBER 18, 2010 —

*Murphy & Sibley, R. Napier Murphy, Adam J. Hand*, for appellants.

*Westmoreland, Patterson, Moseley & Hinson, Thomas W. Herman*, for appellee.